# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FLORISTS' MUTUAL INSURANCE
COMPANY,

        Plaintiff/Counterdefendant,

vs.                                                                                    No. CIV 03-1164 JB/LFG

AGSTAR OF NEW MEXICO, INC., and
FARM CREDIT SERVICES OF THE
MOUNTAIN PLAINS, PCA,

        Defendants/Counterclaimants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on the Plaintiff's Renewed Motions for Judgment

and Memorandum in Support, filed December 6, 2004 (Doc. 71).  The Court held a hearing on this

motion on April 8, 2005.  The primary issues are: (i) whether the Mortgage Holder Clause contained

in the insurance contract limited recovery based on that clause to buildings and structures; and (ii)

whether there is sufficient evidence to support the jury award of $205,000.00 for actual cash value

of any property that was damaged or destroyed.[1]

## FACTUAL BACKGROUND

The mortgaged property in which Farm Credit received a security interest pursuant to Agstar

and Farm Credit's term loan agreement included both Agstar's real and personal property.  See Term

Loan Agreement ¶ 2.08, at 6-7 (dated July 31, 2002); Security Agreement Section 2, at 1 (dated July

---

[1] The Court entered an Order granting the motion in part and denying it in part on October 31, 2005 (Doc. 94).  In footnote 2 of that Order, the Court promised to issue a memorandum opinion explaining the reason for its decision to grant in part and deny in part Plaintiff's motion.  This opinion more fully explains the court's reasoning for its decision.

31, 2002); Mortgage And Security Agreement at 1 (dated July 31, 2002).  They are: (i) real and personal property and fixtures, pledge agreements, corporate stock, letters of credit for $220,000.00, future indebtedness of borrower, see Term Loan Agreement ¶ 2.08, at 7; (ii) accounts receivable, inventory, equipment fixtures, farm products, general intangibles, chattel paper, instruments, documents, books, and records, see Security Agreement Section 2, at 1; and (iii) improvements, equipment, fixtures, rights of way and reversionary rights, privileges hereditaments and appurtenances, all water irrigation and drainage rights and all abstracts or other evidence of title, see Mortgage And Security Agreement at 1.

The Florists' Mutual policy listed Farm Credit as a mortgage holder.  See Business Package Policy, Schedule of Mortgage Holders at 1.  The Florists' Mutual policy also contained a Loss Payable Clause that provided that Florists' Mutual would adjust any loss of "Personal Property, Crop & Mobile Equipment" at the Grant and Estancia greenhouses with both Agstar and Farm Credit. Loss Payable Clause at 1.  The policy's BUSINESS PROPERTY INSURANCE CONDITIONS, Part 10, sets forth certain rights of the entities named as "mortgage holders," and provides:

> 10.  Mortgage Holders
>
>     a.  The term mortgage holder includes trustee.
>
>     b.  WE will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Policy Declarations Page in their order of precedence, as interests may appear.
>
>     c.  The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.
>
>     d.  If WE deny YOUR claim because of YOUR acts or because YOU have failed to comply with the terms of SECTION I, the mortgage holder will still have the right to receive loss payment if the mortgage holder: . . .

Business Property Insurance Conditions, ¶ 10, at 21.

The Loss Payable Clause and the Mortgage Holder Clause of the policy appear in different parts of the policy.  The Loss Payable Clause is an endorsement, added separately, <u>see</u> Loss Payable Clause at 1, whereas the Mortgage Holder Clause is located in Section I -- Business Property Insurance, etc., Form BP-I (3/00), page 21 of 35.  <u>See</u> Mortgage Holder Clause ¶ 10, at 21.

The policy's Loss Payable Clause, setting out what property it covers, states:

> [T]he loss will be adjusted with YOU, the NAMED INSURED, and FARM CREDIT SERVICES OF THE MOUNTAIN PLAINS, PCA . . . as YOUR respective interests may appear, subject to all the conditions of YOUR policy.
>
> Description of PROPERTY: Applies to Personal Property, Crop & Mobile Equipment . . .

Loss Payable Clause at 1.

## PROCEDURAL BACKGROUND

In its Trial Brief, filed November 8, 2004 (Doc. 53), its Motion in Limine, filed November 3, 2004 (Doc 42), and at trial, Farm Credit argued: (i) the policy's Mortgage Holder Clause and its Loss Payable Clause should be read together and in conjunction with the Term Loan Agreement, as applying to one subject matter (all losses and all coverages); and (ii) the mortgage holder was exempt from the defenses that could be raised against Agstar.  <u>See</u> Farm Credit's Trial Brief at 8-9; Farm Credit's Motions in Limine, at 6-8; Transcript of Hearing at 261:8-22 (taken November 9, 2004). Farm Credit argued that, based on the policy, it had coverage for all of the collateral for Agstar's mortgage obligations, including the real property that Agstar owned and all of Agstar's accounts, inventory, equipment, fixtures, farm products -- including without limitation all growing crops as the property more particularly described in the mortgage -- general intangibles, and other personal

property.  See Farm Credit's Motions in Limine, at 6-8.  Farm Credit asserted this claim because: (i) Farm Credit was a named mortgagee in the policy; (ii) the properties named were collateral for the mortgage security; and (iii) the Mortgage Holder Clause, which by its terms would "pay for covered loss . . . to buildings or structures," Mortgage Holder Clause ¶ 10 b, at 21, failed to mention buildings or structures again two paragraphs later, see id. ¶ 10 d, at 21, when the "loss payment" was stated in respect of the mortgagor's acts or non-compliance, id.

The parties informed the Court the day of trial that the Court needed to construe the Mortgage Holder Clause as well as the Loss Payable Clause and decide whether the coverage under the Mortgage Holder Clause was limited to recovery for damage to buildings or structures.  See Transcript of Hearing at 259:16-263:11; 279:25-284:12 (taken November 9, 2004).  The parties had not briefed the Court on this issue, see id. at 263:12-16, except for brief arguments in Farm Credit's Trial Brief, and Motions in Limine, see Farm Credit's Trial Brief at 8-9; Farm Credit's Motions in Limine, at 6-8.  The Court held, in bench rulings, that the feature of the policy's Mortgage Holder Clause exempting the mortgagee from policy coverage defenses was not limited to damages to buildings or structures, but allowed general recovery for loss payment.  See Transcript of Hearing at 3:1-7:10 (taken November 10, 2004).  Thus, the Court ruled that Agstar's alleged failure to give prompt notice did not defeat Farm Credit's right to loss payment in general.  See id.

As a result of these arguments, and as reflected in its Order of November 10, 2004, granting Farm Credit's Motion in Limine, the Court held that Farm Credit, because it is a listed mortgagee under the insurance policy, was not subject to coverage exclusions applicable to the property and income losses that Agstar and Farm Credit incurred.  See id.  At trial, the Court ruled that Farm Credit's right to recover insurance proceeds for losses resulting from the May 2003 destruction of

tomatoes and plants at the Estancia greenhouse facility owned by Agstar of New Mexico was not defeated by Agstar's alleged failure to give prompt notice of the loss to Florists' Mutual. <u>See</u> Court's Jury Instructions (Given) Nos. 5-7. The Court based its rulings on its interpretation and construction of the Loss Payable Clause and the Mortgage Holder Clause in the insurance policy. <u>See</u> Transcript of Hearing at 3:1-7:10 (taken November 10, 2004).

At the close of evidence, Florists' Mutual made an objection to certain Jury Instructions, and asked the Court to rule that the Mortgage Holder Clause in the Insurance Policy limited Farm Credit's rights under that clause to recover for damage to buildings or structures. <u>See</u> Transcript of Hearing at 259:21-266:2; 279-25:283-9 (taken November 9, 2004). Florists' Mutual also made a motion for Judgment as a Matter of Law concerning the sufficiency of the evidence of the equipment breakdown coverage, damage to the shade curtain, as well as damage to the root medium. <u>See</u> Transcript of Hearing at 16:10-24:5 (taken November 10, 2004). The Court, in a bench ruling, found that there was sufficient evidence of equipment breakdown, damage to the shade curtain, and damage to the root medium for the jury to decide those issues. <u>See</u> <u>id.</u> at 24:7-25:24 (taken November 10, 2005).

The Court entered a final judgment of $2,775,000.00 in favor of Farm Credit. <u>See</u> Judgment, filed November 23, 2004 (Doc. 70). The judgment reflects a jury award of $205,000.00 Actual Cash Value for "property that was damaged or destroyed," an award of $300,000.00 for "perishable goods that were damaged or destroyed due to spoilage," and an award of $2,250,000.00 for "business loss and extra expenses." Special Verdict Form ¶¶ 2-4, at 1-2; Transcript of Hearing at 78:1-10 (taken November 10, 2004). The jury also found that notice of loss that Agstar provided to Florists' Mutual was not "reasonably timely considering all the facts and circumstances" of the case, and that Florists'

Mutual was "substantially prejudiced by the timing of Agstar's notice of its property loss." Special Verdict Form ¶¶ 7-8, at 2-3; Transcript of Hearing at 78:20-79:4 (taken November 10, 2004).

Florists' Mutual, pursuant to rule 50(b) of the Federal Rules of Civil Procedure, renews its Motions for Judgment as a Matter of Law made before the submission of the case to the jury.

## RULE 50(b)

Rule 50(b) of the Federal Rules of Civil Procedure provides:

If for any reason the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment . . .

## NEW MEXICO INSURANCE LAW

The Supreme Court of New Mexico set out the principles of contract interpretation in Rummel v. Lexington Ins. Co., 123 N.M. 752, 759, 945 P.2d 970, 977 (1997). Under New Mexico law, a court construing an insurance policy is obligated to interpret the entire contract as a whole. See id. at 759, 945 P.2d at 977 (citation omitted). "If any provisions appear questionable or ambiguous, we will first look to whether their meaning and intent is explained by other parts of the policy." Id. "If ambiguities cannot be resolved by examining the language of the insurance policy, courts may look to extrinsic evidence such as the premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and oral expressions of the parties' intentions." Id. Where the policy terms are reasonably subject to more than one interpretation, the ambiguous terms must "be given the strongest interpretation against the insurer which they will reasonably bear." Id. (citation omitted). "The resolution of ambiguities becomes a matter for the court and is often described as a matter of law rather than a factual determination."

Id. at 758, 945 P.2d at 976 (citation omitted).  "The doctrine of reasonable expectations only applies where the policy terms are ambiguous."  Riordan v. Lawyers Title Ins. Corp., No. CIV 04-0070, 2005 U.S. Dist. LEXIS 6784 at *8 (D.N.M. March 3, 2005)(citing Slack v. Robinson, 134 N.M. 6, 9, 71 P.3d 514, 517 (Ct. App. 2003)).

"The obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy."  Miller v. Triad Adoption & Counseling Servs., Inc., 133 N.M. 544, 547, 65 P.3d 1099, 1102 (2003)(citation omitted); Blackhawk-Central City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co., 214 F.3d 1183, 1188 (10th Cir. 2000)("[T]he proper interpretation and construction of an insurance policy is a matter of law. . . .")(citing I.D.G., Inc., v. St. Paul Fire & Marine Ins. Co., No. 99-5067, 2000 U.S. App. LEXIS 1680, at *3 (10th Cir. Feb. 7, 2000)).

"Unambiguous insurance contracts must be construed in their usual and ordinary sense."  Slack v. Robinson 134 N.M. at 8-9, 71 P.3d at 516-17 (citation omitted).  "[W]here the terms of an agreement are plainly stated, without ambiguity, the intention of the parties must be ascertained from the language used."  McKinney v. Davis, 84 N.M. 352, 353, 503 P.2d 332, 333 (1972)(citations omitted).  "[W]hen a court interprets the terms of an insurance policy that is unclear and ambiguous, the reasonable expectations of the insured guide the analysis.  However, when the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written."  Truck Ins. Exchange v. Gagnon, 131 N.M. 151, 153, 33 P.3d 901, 903 (Ct. App. 2001)(citations omitted).

## LAW REGARDING MORTGAGE CLAUSES AND LOSS PAYABLE CLAUSES

### 1.    Simple Mortgage Clause.

The language of an insurance clause determines whether a party is a loss payee or a mortgagee payee.  See In re Tower Air, Inc., v. Finova Capital Corp., 397 F.3d 191, 203 (3d Cir. 2005)(citing

Couch on Insurance §§ 65:8, 9, 32 (3d ed. 1984)).  When a clause contains the language "as its interest may appear," that clause is a simple mortgage clause.  Pac. Ins. Co., v. Kent, 120 F. Supp. 2d 1205, 1215 (C.D.Cal. 2000)(citation omitted).  "[A] simple mortgage clause creates a loss payee." Id.  "The loss payee is subject to such defenses as the insurer may have against the mortgagor, while the mortgagee payee is not."  In re Tower Air, Inc., 397 F.3d at 203.  A loss payee "is a mere appointee of the insured, and as such is to receive the insurance proceeds to the extent of his interest. . . . As an appointee, the rights of a loss payee rise no higher than the rights of the insured."  Young v. Seven Bar Flying Serv., Inc., 101 N.M. 545, 548, 685 P.2d 953, 956 (1984).  See also Fulwiler v. Traders & Gen. Ins. Co., 59 N.M. 366, 371, 285 P.2d 140, 143 (1955)("[U]nder a loss-payable clause no contract of insurance is made between the insurer and the loss-payee and the right of recovery of the loss-payee cannot rise above that of the named insured, so that a breach of the conditions of the policy by the insured which precludes his recovery likewise defeats the recovery of his appointee, the loss-payee.").

## 2.      Standard Mortgage Clause.

"The standard mortgage clause . . . is an independent and separate contract between the mortgagee and the insurance company."  Nassar v. Utah Mortgage & Loan Corp., 100 N.M. 419, 422, 671 P.2d 667, 670 (Ct. App. 1983).  See also In re Tower Air, Inc., v. Finova Capital Corp., 397 F.3d at 203 ("[A] mortgagee payee has an independent agreement with the insurer.")(citation omitted).  "[U]nder a union or standard mortgage clause it is usually provided the interest of the mortgagee in the proceeds of the policy shall not be defeated by the act or neglect of the mortgagor or owner of the insured property."  Fulwiler v. Traders & Gen. Ins. Co., 59 N.M. at 371, 285 P.2d at 143.  "The mortgagee payee is treated 'just as if he or she had applied for the insurance entirely

independently of the mortgagor.'" In re Tower Air, Inc., v. Finova Capital Corp., 397 F.3d at 203 (citation omitted).  "A standard mortgage clause 'operates as a distinct and separate contract' between the insurer and the mortgagee." Nassar v. Utah Mortgage & Loan Corp., 100 N.M. at 422, 671 P.2d at 670 (citation omitted).  A standard mortgage clause "gives the mortgagee an insured interest that the insured does not have." United States v. Commercial Union Ins. Cos., 821 F.2d 164, 166 (2d Cir. 1987)(citing Satchell v. Ins. Placement Facility of Pa., 241 Pa. Super. 287, 297, 361 A.2d 375, 380 (1976)).

## ANALYSIS

The Court agrees with Florists' Mutual that this Court's ruling and the resulting judgment calls for a thorough analysis of such coverages and the policy provisions.  The construction of the Mortgage Holder Clause -- Standard Mortgage Clause -- is critical in this case, because the jury found that Agstar failed to give timely notice, and found that such failure substantially prejudiced Florists' Mutual.  The jury's finding prevents Agstar from recovering against Florists' Mutual under the insurance policy for the substantial prejudice resulting from Florists' Mutual's inability to investigate possible diseases in the tomato plants.  Farm Credit stands in the shoes of Agstar under the Loss Payable Clause -- Simple Mortgage Clause --, see Young v. Seven Bar Flying Serv., Inc., 101 N.M. at 548, 685 P.2d at 956; Fulwiler v. Traders & Gen. Ins. Co., 59 N.M. at 371, 285 P.2d at 143, but has an independent contract with Florists' Mutual under the Standard Mortgage Clause, see Fulwiler v. Traders & Gen. Ins. Co., 59 N.M. at 371, 285 P.2d at 143.  Because Agstar is prevented from recovering under the insurance policy, Farm Credit, standing in its shoes, is prevented from recovering under the Loss Payable Clause that which Agstar could not recover under the policy. The issue then becomes whether Farm Credit can recover under the Mortgage Holder Clause.  After

further reflection, and independent research, the Court finds that its construction of the Mortgage Holder Clause, during the press of a short trial, was erroneous.

Florists' Mutual argues that the Mortgage Holder Clause and the Loss Payable Clause are completely separate features of an insurance policy and operate independently. See Florists' Mutual's Renewed Motions for Judgment and Memorandum in Support ("Renewed Motions for Judgment") at 3-17; Transcript of Hearing at 259:21-261:6 (taken November 9, 2004). Florists' Mutual also argues that the Mortgage Holder Clause limits the mortgagee's recovery under that clause to damage for buildings or structures. See Renewed Motions for Judgment at 13-17; Transcript of Hearing at 261:2-6 (taken November 9, 2004).

Farm Credit contends that the Loss Payable Clause and the Mortgage Holder Clause should be read in conjunction with each other, as well as with the entire policy. See Transcript of Hearing at 261:8-22. Farm Credit argues that Farm Credit is listed as a "Mortgage Holder" in the policy's "Schedule of Mortgage Holders," and that "[n]owhere does the Policy limit that designation to Farm Credit's security interest in 'buildings or structures.'" Farm Credit's Response to Plaintiff's Renewed Motion for Judgment ("Response") at 6, filed December 23, 2004 (Doc. 75). Farm Credit also argues that the two clauses are dependent upon one another - - Farm Credit specifically cites the language in the Simple Mortgage Clause that states, "subject to all conditions of YOUR policy." Id. at 7. Finally, Farm Credit contends that based on a plain reading, its recovery under the Mortgage Holder Clause is not limited to damages for buildings and structures. See id. at 3-7.

## I.  **THE MORTGAGE HOLDER CLAUSE AND THE LOSS PAYABLE CLAUSE.**

Florists' Mutual asks the Court to hold: (i) that the Standard Mortgage Clause be restricted to coverage of "buildings and structures" stated in the clause; (ii) that Farm Credit has no insurable

interest in the business interruption loss; and (iii) that the Judgment be amended to strike the award to Farm Credit in respect of $300,000.00 for perishable goods and $2,250,000.00 for business loss and extra expenses.  <u>See</u> Renewed Motions for Judgment at 17.  Because the Court finds that the Mortgage Holder Clause limits recovery to losses for structures and buildings, and the jury awards for perishable goods and business loss and extra expenses do not include losses or damages to buildings or structures, the Court need not reach the issue of whether Farm Credit had an insurable interest in the business interruption loss.

Upon further reflection and independent research, the Court finds that its ruling at trial should not stand.  Based on the Tenth Circuit's construction of an almost identical Standard Mortgage Clause in <u>First Nat'l Bank v. Am. States Ins. Co.</u>, No. 96-3164, 1998 U.S. App. Lexis 335 (10th Cir. January 9, 1998), the United States District Court for the Eastern District of Michigan's construction of a similar Standard Mortgage Clause in <u>Continental Mortgage and Equity Trust v. Meridian Mut. Ins. Co.</u>, 969 F. Supp. 460 (E.D. Mich. 1997), and the general relationship of a standard mortgage clause to a simple mortgage clause and to insurance policies in general, the Court finds that the Standard Mortgage Clause here is clear and unambiguous, and limits the mortgagee's recovery, independent of defenses against Agstar, to damage incurred to buildings or structures.  Because the Standard Mortgage Clause is limited to damages incurred to buildings or structures, and the jury found that Agstar unreasonably delayed in notification, and that such delay was substantially prejudicial, the Court will amend the Judgment to strike the award to Farm Credit in respect of $300,000.00 for perishable goods and $2,250,000.00 for business loss and extra expenses.

### 1.    Tenth Circuit's Construction of Almost Identical Clause.

The Tenth Circuit in <u>First Nat'l Bank v. Am. States Ins. Co.</u>, No. 96-3164, 1998 U.S. App.

Lexis 335, in a three judge panel consisting of Judges Stephen H. Anderson, David M. Ebel, and Paul

J. Kelly Jr., and written by Judge Kelly, stated, reviewing an almost identical Standard Mortgage

Clause: "Under this policy, the mortgage holder's indemnification is limited to loss of or damage to

buildings and structures. . . ."[2] First Nat'l Bank v. Am. States Ins. Co., No. 96-3164, 1998 U.S. App.

Lexis 335 at *11.  The Tenth Circuit further stated that, "[a]lthough it is always proper to consider

the purpose of a policy when construing its terms, an alleged purpose of a policy cannot trump its

clear and unambiguous language."  Id.  The Standard Mortgage Clause in First Nat'l Bank v. Am.

States Ins. Co., provided:

> 2.  Mortgage holders
>
> > a.  The term 'mortgage holder' includes trustee.
> >
> > b.  We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.
> >
> > * * * *
> >
> > d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment. . . .

First Nat'l Bank v. Am. States Ins. Co., No. 96-3164, 1998 U.S. App. Lexis 335 at *6-7; First Nat'l

Bank v. Am. States Ins. Co., No. 95-1132-PFK, 1996 U.S. Dist. LEXIS 1083 at *8, 11 (D.Kan.

January 23, 1996).  The issue in First Nat'l Bank v. Am. States Ins. Co., was whether the Insurance

Company should have paid only its named insured for loss of business income, or should have jointly

---

[2]  The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition." This unpublished decision meets both these criteria and the rules therefore allow citation to this unpublished decision.

-12-

paid either the named insured's mortgage holder or loss payee.  See First Nat'l Bank v. Am. States Ins. Co., No. 96-3164, 1998 U.S. App. Lexis 335 at *2.  In one portion of its ruling, the Tenth Circuit said that neither the Mortgage Holder Clause nor the Loss Payable Clause mentioned business income, and that, although the policy itself contained a provision for business income, the plain language of the Mortgage Holder Clause and the Loss Payable Clause did not allow recovery to the named mortgage holder or the loss payee.  See id. at *5, 7.  Although the Tenth Circuit did not specifically address the effect of paragraph d, the Court did have paragraph d in front of it, and still specifically stated: "Under this policy, the mortgage holder's indemnification is limited to loss of or damage to buildings and structures . . ." Id. at *11.

**2.      The United States District Court for the Eastern District of Michigan.**

The court in Continental Mortgage and Equity Trust v. Meridian Mut. Ins. Co., 969 F. Supp. 460, similarly construed an almost identical Standard Mortgage Clause.  See Continental Mortgage and Equity Trust v. Meridian Mut. Ins. Co., 969 F. Supp. at 464.  The Standard Mortgage Clause in Cont'l Mortgage and Equity Trust v. Meridian Mut. Ins. Co., provided:

2.  Mortgage Holders

The term 'mortgage holder' includes trustee.

**We will pay for covered loss of or damage to buildings or structures to each mortgage  holder** shown in the Declarations in their order of precedence, as interests may appear.

The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder

-13-

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

Id. at 462-463 (emphasis included in original).  The United States District Court for the Eastern District of Michigan held that "[t]he plain, unambiguous terms of the Mortgagee Clause entitles Continental to payment *only* for ***building or structural*** loss.  Id. at 464 (emphasis included in original).  The mortgage holder there was trying to recover lost rents, and the court stated: "Lost rents is not 'building or structural loss.'"  Id.  The Court also found that the fact that the mortgage agreement granted the mortgage holder a security interest was irrelevant as to the issue of liability under the Mortgage Holder Clause.  See id.  The Mortgage Holder Clause here is almost identical, and according to the Tenth Circuit, and the federal district court for the Eastern District of Michigan, the language of the clause limits recovery to building or structural loss.  Thus, under this Standard Mortgage Clause, Farm Credit's recovery is limited to building or structural loss.

**3.     General Relationship of Standard Mortgage Clauses to Simple Mortgage Clauses and Insurance Policies as a Whole.**

Additionally, the law regarding standard mortgage clauses and simple mortgage clauses leads this Court to conclude that its construction of the insurance policy during the trial was erroneous.  The Court, in its construction of the policy, used the property coverage in the Loss Payable Clause to help define the property coverage in the Mortgage Holder Clause.  See Transcript of Hearing at 3:1-7:10 (taken November 10, 2004).  This Court first recognized that the Loss Payable Clause created rights in Farm Credit to recovery for personal property, crops and equipment.  See id.  The

Court then questioned whether paragraph d of the Standard Mortgage Clause was a "severe limitation" on the rights created in the Loss Payable Clause.  Id. at 4:22-25.  The Court then construed paragraphs 10 b and c in the Mortgage Holder Clause, in light of the Loss Payable Clause, as merely talking about buildings and structures to define order of preference and timing of payment, and not as a limitation of coverage in the Mortgage Holder Clause, and found that 10 d was not a severe limitation on the Loss Payable Clause.  See id. at 4:1-6:21.

This construction was erroneous.  Although an insurance contract should be viewed as a whole, a Standard Mortgage Clause "operates as a distinct and separate contract between the insurer and the mortgagee."  Nassar v. Utah Mortgage & Loan Corp., 100 N.M. at 422, 671 P.2d at 670.  "The mortgagee payee is treated 'just as if he or she had applied for the insurance entirely independently of the mortgagor.'"  In re Tower Air, Inc., v. Finova Capital Corp., 397 F.3d at 203 (citation omitted).  A Standard Mortgage Clause allows the named mortgage holder to recover, regardless of the insured's ability to recover under the policy, to the extent allowable under the Standard Mortgage Clause.  See Fulwiler v. Traders & Gen. Ins. Co., 59 N.M. at 371, 285 P.2d at 143.  A Standard Mortgage Clause "gives the mortgagee an insured interest that the insured does not have."  United States v. Commercial Union Ins. Cos., 821 F.2d at 166 (2d Cir. 1987).

A Simple Mortgage Clause on the other hand "creates a loss payee."  In re Tower Air, Inc., v. Finova Capital Corp., 397 F.3d at 203.  A loss payee "is a mere appointee of the insured, and as such is to receive the insurance proceeds to the extent of his interest. . . .  As an appointee, the rights of a loss payee rise no higher than the rights of the insured."  Young v. Seven Bar Flying Serv., Inc., 101 N.M. at 548, 685 P.2d at 956.  "The loss payee is subject to such defenses as the insurer may have against the mortgagor, while the mortgagee payee is not."  Id.

Thus, the simple mortgage clause and the standard mortgage clause are two completely separate and distinct vehicles used to create third party interests in an insurance policy. Each clause accomplishes something that is separate and distinct from the other clause. In addition, there is nothing that prohibits two different third parties from being named in the standard and simple mortgage clauses. For example, in this case, while Farm Credit was named in both the Loss Payable Clause as a loss payee, and in the Mortgage Holder Clause as a mortgagee payee, a different third party could have been named in the Loss Payable Clause. If that were the case, it would be illogical for the Court to construe the rights of the loss payee (one third party) under the Simple Mortgage Clause as being interrelated to and dependent on the rights of the mortgagee payee (a different third party) under the Standard Mortgage Clause. That the named loss payee and mortgagee payee happen to be named in both clauses does not change the fact that each clause is a distinct vehicle with a distinct purpose, and that the rights under each clause are not dependent on each other. The rights in the Simple Mortgage Clause do not create similar rights in the Standard Mortgage Clause, and vice versa. Each clause creates distinct and separate rights for the named third party.

This Court initially questioned whether paragraph 10 d was a severe limitation on the rights created in the Loss Payable Clause. See Transcript of Hearing at 4:22-25 (taken November 10, 2004). Because the Standard Mortgage Clause is a separate and distinct contract, the initial question this Court should ask instead is what rights are first created in the Mortgage Holder Clause. Again, the Tenth Circuit, and the United States District Court for the Eastern District of Michigan have stated that this clause is limited to buildings and structures. This Court agrees with that construction and interpretation. First, the Mortgage Holder Clause in paragraph b specifically states: "WE will pay  for covered loss of or damage to buildings or structures to each mortgage holder. . . ."

-16-

Mortgage Holder Clause ¶ 10 b at 21.  Looking at the Mortgage Holder Clause as an independent and separate contract, paragraph b sets out exactly what loss is covered.  Although the second half of the paragraph describes the preference of order of payment, that does not change that the opening phrase in the paragraph specifically sets out what loss is covered.  Paragraph b creates the right of the named mortgage holders to recover payment for covered loss to buildings and structures.  Second, paragraph d is limited by paragraph b.  Paragraph b initially set out that the insurer would pay for covered loss to buildings or structures.  Paragraph d does not create any new coverage, but rather creates the additional right of the mortgage holder to recover loss payment -- as defined and limited in paragraph b to buildings and structures -- even if the insured is unable to recover.  Rather than creating new coverage beyond that for buildings or structures, paragraph d creates the right to loss payment -- to buildings and structures -- regardless of the actions of Agstar.

Also, because the standard mortgage clause is a separate contract between the insurer and the mortgagee payee, the standard mortgage clause does not open up the insurer to liability for any and all coverage found in the contract, when limited as in this case to buildings and structures, and those coverage provisions themselves do not link the standard mortgage clause to the particular provision. This construction is consistent with the Tenth Circuit's construction in First Nat'l Bank.  Although the Standard Mortgage Clause in First Nat'l Bank contained the same phrasing that is in contention here -- "[i]f we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder . . ." -- the Tenth Circuit did not open up recovery for the mortgagee payee to the entire policy, specifically not to business income, which was contained in a separate coverage provision of the policy.  In fact, the Tenth Circuit stated: "Under this policy, the mortgage holder's

-17-

indemnification is limited to loss of or damage to buildings and structures." First Nat'l Bank v. Am. States Ins. Co., No. 96-3164, 1998 U.S. App. Lexis 335 at *11.  The language in that policy did not open up the insurer's liability to the mortgagee payee for business income, because the Standard Mortgage Clause was limited to buildings and structures.

Also, in First Nat'l Bank, the policy contained a Simple Mortgage Clause, as well as a Standard Mortgage Clause.  The Simple Mortgage Clause provided coverage for buildings and personal property.  Although the Tenth Circuit did not need to decide the issue of whether the Standard Mortgage Clause was subject to the Simple Mortgage Clause, it is instructive that the Court, faced with both clauses providing different coverage, again stated, concerning the Standard Mortgage Clause: "Under this policy, the mortgage holder's indemnification is limited to loss of or damage to buildings and structures." First Nat'l Bank v. Am. States Ins. Co., No. 96-3164, 1998 U.S. App. Lexis 335 at *11.  The Tenth Circuit also stated: ". . . and the loss payee's indemnification is limited by the plain language to loss to 'Covered Property.'" Id.  Instructive here, the Tenth Circuit separated out the difference in coverage given to the mortgagee payee under the Standard Mortgage Clause, and the loss payee under the Simple Mortgage Clause.

Although this Court, here, did believe that paragraph 10 b and c of the Mortgage Holder Clause did not limit coverage to the mortgagee payee to buildings and structures, the Court read the Mortgage Holder Clause in light of the Court's erroneous belief that the Loss Payable Clause was interrelated with, dependent upon, and created rights to, the Mortgage Holder Clause.  In light of the view that the standard mortgage clause creates its own rights, and that the simple mortgage clause does not create rights in the standard mortgage clause, the Court agrees with the Tenth Circuit, and the United States District Court for the Eastern District of Michigan, that the language of the

-18-

Mortgage Holder Clause is plain and unambiguous in limiting recovery by the mortgagee payee to buildings and structures. This Court's initial construction and interpretation here of the Mortgage Holder Clause supports this idea. Although this Court initially found that there was coverage under the Mortgage Holder Clause beyond coverage for buildings and structures, this Court initially stated that "Paragraph 10 d describes what happens when the insured has defenses. Again, [the Court agrees] with Florists' Mutual, that 10 d contained certain conditions upon which payment may be made and makes no change in the coverage provided. But again, I think that coverage is provided in the loss-payable clause." Transcript of Hearing at 6:1-5 (taken November 10, 2004). The Court did not believe that 10 d added any coverage, but rather erroneously created coverage in the Mortgage Holder Clause based on coverage created in the Loss Payable Clause. Thus, because the Loss Payable Clause does not create coverage in the Mortgage Holder Clause, and paragraph 10 d does not provide additional coverage, the Mortgage Holder Clause creates coverage only as to buildings or structures. Paragraph 10 b clearly creates coverage under the Mortgage Holder Clause to buildings and structures: "WE will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Policy Declarations Page in their order of precedence, as interests may appear." Mortgage Holder Clause ¶ 10 b at 21. There is no other language in the Mortgage Holder Clause that creates any additional coverage beyond buildings and structures. No other coverage is specifically identified in the Mortgage Holder Clause.

The fact that the Mortgage Holder Clause is located in the portion of the policy captioned "Business Property Insurance Conditions," and is not located in the standard form of the policy devoted exclusively to coverage applicable only to insured "Real Property," Response at 7, does not change the fact that the plain, unambiguous language of the clause limits coverage to buildings and

structures.

Finally, although Farm Credit is right that it is listed as a "Mortgage Holder" in the Schedule of Mortgage Holders, Farm Credit is incorrect in its assertion that "[n]owhere does the Policy limit that designation to Farm Credit's security interest in 'buildings or structures.'" Id. at 6. As previously discussed, the Mortgage Holder Clause itself limits Farm Credit's rights as a Mortgage Holder to loss to buildings or structures.

### 4. Language Making Simple Mortgage Clause "Subject to all the Conditions of YOUR Policy."

Farm Credit contends that, because the Loss Payable Clause contains the phrase, "subject to all conditions of [Agstar's] policy," Farm Credit's rights under such clause are made subject to Farm Credit's rights under the Mortgage Holder Clause -- specifically to paragraph d. Id. at 7. Farm Credit argues that, because the Loss Payable Clause is subject to the conditions in paragraph d, that Farm Credit has the right to recover payment under paragraph d for coverage listed in the Loss Payable Clause. Farm Credit may be right that the language "subject to" in the Loss Payable Clause makes the rights therein subject to paragraph d. This fact, however, does not help Farm Credit in its attempt to recover for damages to property other than buildings and structures.

First, paragraph d itself is initially limited and defined by paragraph b. Paragraph d only allows recovery to the mortgage holder for damage to buildings and structures as defined in paragraph b, and adds the additional right that the mortgage holder may recover regardless of the insured's actions -- as to buildings or structures. The endorsement containing the Loss Payable Clause does not change this initial construction. If Farm Credit's rights under the Loss Payable Clause are in fact subject to paragraph d, those same rights are subject to the limitations placed on

-20-

paragraph d by paragraph b.  Thus, the Loss Payable Clause is subject to paragraph d's right to recover loss payment to buildings and structures regardless of Agstar's acts of negligence.  Farm Credit already had this right under the Mortgage Holder Clause itself.

Second, although the Loss Payable Clause does provide "subject to all conditions of [Agstar's] policy," it also contains within the same clause, immediately preceding the "subject to" language, specific coverage to which the Loss Payable Clause applies.  The clause states specifically; "In the event of a loss to the PROPERTY described below . . . ."  And immediately following the "subject to" language, the clause provides "Description of PROPERTY: Applies to Personal Property, Crop & Mobile Equipment at Locations #1 & #2."  Loss Payable Clause at 1.  The phrase "subject to," if applied as liberally as Farm Credit desires, would completely nullify the limiting language of coverage immediately preceding and following it.  It would not make sense for the Loss Payable Clause to limit its application to "Personal Property, Crop & Mobile Equipment" and then create new application and rights under the Mortgage Holder Clause by inserting the words "subject to" sandwiched between the limiting language of the Loss Payable Clause itself.  Both clauses are limited to their own described coverage.  To take the "subject to" language and say that paragraph 10 d of the Mortgage Holder clause now provides new coverage to the loss payee contradicts the limiting language in each clause.

Farm Credit relies on The Travelers Indem. Co., v. Storecraft, Inc., 491 S.W.2d 745 (Tex. Civ. App. - Corpus Christi 1973), in support of its contention.  See Response at 8.  In Travelers, the insurance policy at issue contained both a Standard Mortgage Clause and a Simple Mortgage Clause. See The Travelers Indem. Co., v. Storecraft, Inc., 491 S.W.2d at 746.  The policy included an attached Simple Mortgage Clause that named Storecraft as a loss payee and provided: "It is agreed

that any loss or damages ascertained and proven to be due to the insured under this policy shall be held payable to Storecraft, Inc., 614 S. Port Ave, Corpus Christi, Texas, as interest may appear; subject, however, to all of the terms and conditions of this policy, which are made a part hereof." Id. The policy also contained a standard mortgage clause which provided: "This policy, as to the interest of the mortgagee only therein, shall not be invalidated by an act or neglect of the mortgagor or owner of the within described property. . . . This policy may be canceled as to the interest of any mortgagee named herein by giving such mortgagee ten days written notice." See id. at 746-47.

In Travelers, the insurer argued that the loss payable endorsement was a simple or open loss payable clause that merely designated Storecraft as the appointee to receive insured funds and did not entitle Storecraft to the rights set forth in the policy's Standard Mortgage Clause. See id. at 747. That court rejected that contention and reasoned: "[T]he Loss Payable Clause was 'subject, however, to all the terms and conditions of this policy, which are made a part hereof.' That language includes the Mortgage Clause in its entirety." Id. at 748. Assuming without deciding that the court in Travelers was correct in holding that the "subject to" language of the Loss Payable Clause gave Standard Mortgage Clause rights to Storecraft beyond those rights of a mere appointee, even though Storecraft was not named in the Standard Mortgage Clause or as a mortgagee at the front of the policy, but was only named in the Loss Payable Clause, Farm Credit's argument still fails. Again, here if Farm Credit's rights under the Loss Payable Clause are in fact subject to the Mortgage Holder Clause and paragraph d, those same rights are subject to the limitations placed on paragraph d by paragraph b. This Court construes the Mortgage Holder Clause in its entirety as limited to buildings or structures. Thus, the Loss Payable Clause is subject to the Mortgage Holder Clause in its entirety and, therefore, is subject to the Mortgage Holder Clause's limitation to buildings or structures. Even

if the "subject to" language in the Loss Payable Clause gives Farm Credit rights under the Mortgage Holder Clause, those rights are still limited to buildings and structures.

     **5.**     **Admissions at Trial.**

Farm Credit contends that admissions at trial by Florists' Mutual claims adjuster Thomas Richey are consistent with the Court's previous ruling that the Mortgage Holder Clause was not limited to damage for buildings or structures. See Response at 10-12. First, Farm Credit contends that, because Richey stated that failure to submit a sworn proof of loss in compliance with 10 d (2) of the Mortgage Holder Clause -- which requires the mortgage holder to "submit a sworn statement of proof of loss within sixty (60) days after receiving notice from US of YOUR failure to do so. . . . ," Mortgage Holder clause ¶ 10 d (2), at 21, -- was a violation of the policy, his statement constitutes an admission by Richey that coverage did exist under the Mortgage Holder Clause, see Response at 11. The Court does not agree that this constitutes an admission by Richey that coverage exists beyond buildings and structure. Additionally, this testimony is not inconsistent with the Court's construction here. At no time did Richey testify that 10 d (2) was the only defense to coverage under the Mortgage Holder Clause. Merely because a defendant testifies that one section of a clause is violated procedurally does not mean that the defendant admits that coverage under that clause exists, or is somehow waiving other defenses to coverage. Richey's testimony that Farm Credit was required to submit proof of loss within 60 days and failure to do so breached a condition of the Mortgage Holder Clause does not equate to an admission that coverage under the Mortgage Holder Clause extended beyond damage to buildings or structures.

Second, Farm Credit contends that because Richey, when asked on cross examination "So when Florists' Mutual wanted a portion of this paragraph to apply to losses of buildings and

structures, it knew to put the terms "buildings and structures" in those paragraphs," stated "yes," Transcript of Trial Proceeding at 137:22-138:1 (taken November 9, 2004), and when asked, "And paragraph d did not have those terms," stated "no," id. at 138:2-3, his testimony constituted an admission of coverage beyond buildings and structures, see Response at 11-12.  Again, the Court does not agree that this testimony constituted an admission by Richey as to coverage under the Mortgage Holder Clause, nor is it inconsistent with the Court's construction here.  Richey agreed only that Florists' Mutual knew how to include the terms "buildings and structures" when it wanted a portion of a paragraph to apply to losses of buildings or structures.  Richey, at no time, testified that he believed the Mortgage Holder Clause as a whole was not limited to buildings and structures.  He did not admit that there was coverage under the Mortgage Holder Clause beyond buildings and structures.  He did not admit that paragraph d was not subject to those limitations that paragraph b placed on it.

Even if Richey's testimony could be considered as evidence of the parties' intentions as to coverage beyond buildings and structures under the Mortgage Holder Clause, that evidence would go to any ambiguities in the clause.  See Rummel v. Lexington Ins. Co., 123 N.M. at 759, 945 P.2d at 977 ("If ambiguities cannot be resolved by examining the language of the insurance policy, courts may look to extrinsic evidence such as the premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and oral expressions of the parties' intentions.").  The Court has already found that the Mortgage Holder Clause is clear and unambiguous on its face.  Evidence of the parties' intentions would go to any ambiguities and therefore, is not helpful here.  See Truck Ins. Exchange v. Gagnon, 131 N.M. at 153, 33 P.3d at 903 (Ct. App. 2001)(""[W]hen a court interprets the terms of an insurance policy that is unclear and

ambiguous, the reasonable expectations of the insured guide the analysis.  However, when the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written.'"'); Richardson v. Farmers Ins. Co. of Ariz., 112 N.M. 73, 74, 811 P.2d 571, 572 (1991)("Absent ambiguity, provisions of contract need only be applied, rather than construed or interpreted."); McKinney v. Davis, 84 N.M. at 353, 503 P.2d at 333 ("[W]here the terms of an agreement are plainly stated, without ambiguity, the intention of the parties must be ascertained from the language used.")(citations omitted).  See also Hoge v. Farmers Mkt. & Supply Co., 61 N.M. 138, 141, 296 P.2d 476, 478 (1956)("As we have indicated previously, we agree with appellant as to the requirement of the law that the meaning of the contract, if it can be done, must be ascertained from a consideration of the contract itself; that parol evidence will never be taken as to the intent of the parties unless there is uncertainty and ambiguity in the contract.").  The policy language here is clear and unambiguous, and thus the court need only apply it.[3]

Even if the Court did consider Richey's testimony as evidence of the parties' intentions, it does not suggest that Forists' Mutual intended the Mortgage Holder Clause to cover anything other than damage to buildings or structures.  Richey's testimony does not make this clause ambiguous.[4]

---

[3] Tellingly, both parties argued that the clause was unambiguous  -- at least if the Court agreed with their construction.  See Transcript of Hearing at 282:2-9; 262:9-10 (taken November 10, 2004).  Additionally, neither the Tenth Circuit in First Nat'l Bank nor the United States District Court for the Eastern District of Michigan in Continental Mortgage, thought this policy language was ambiguous.  Here, there was a jury present, yet both parties insisted that the Court construe the contract; Farm Credit only said that, if the Court found the contract ambiguous, the Court should allow the jury to construe it.  See id. at 182:1-183:5.

[4] Farm Credit did not specifically argue in its Motion that the "admissions" at trial constituted waiver.  However, even if Farm Credit had made this argument, New Mexico follows the majority rule that waiver cannot be invoked to form a contract, or to create coverage not already provided in the policy.  See Jackson Nat'l Life Ins. Co. v. Receconi, 113 N.M. 403, 412, 827 P.2d 118, 127 n.9 (1992)(citing Western Casualty & Sur. Co. v. City of Santa Fe, 84 N.M. 409, 411, 504 P.2d 17, 19

**6.      Agreement between Agstar and Farm Credit.**

Finally, Farm Credit contends that, because Agstar had contracted with Farm Credit to "secure and maintain . . . a standard mortgagee's endorsement" with respect to crops and gave a security interest in them, that these "reasonable expectations" should determine the Court's construction of the policy.  Response at 14-16.  The expectations between Agstar and Farm Credit in their independent agreement do not control the parties' -- to the insurance contract -- expectations about the insurance policy and the Standard Mortgage Clause.  The clause's plain language limits coverage to buildings and structures.  Although Agstar may have failed with regard to any duties or expectations that Farm Credit had, that failure does not affect the insurance policy itself, but rather possibly affects the legal relationship between Agstar and Farm Credit.  Agstar may have had a duty to insure, or a contractual obligation to insure, but that is a duty and contract with Farm Credit, and not with Florists' Mutual.  The agreement between Agstar and Farm Credit does not make the language or meaning of the Mortgage Holder Clause ambiguous.

Similarly, the fact that Farm Credit had a security interest in Agstar's perishable goods and business income does not create additional coverage for Farm Credit under the Standard Mortgage Clause.  See Response at 14.  The Court in Continental Mortgage & Equity Trust v. Meridian Mut. Ins. Co., was faced with a similar contention, and stated:

> Continental points out that the mortgage agreement entered into between it and Bell grants Continental a security interest in the rents at Crystal Court Apartments.  This court fails to see the relevance of this fact for the issue at hand.  Nothing contained in the Policy at issue makes Meridian's liability under the Mortgagee Clause co-extensive with Continental's security interest under the mortgage agreement between Bell and Continental.

_____

(1972); 16B John & Jean Appleman, Insurance Law & Practice, § 9090, at 588-89 n.8 (rev. vol. 1981)).

969 F.Supp. at 460, 464 n.5.  Similarly here, there is nothing contained in the Standard Mortgage Clause or the policy that makes Florists' Mutual's liability under the Standard Mortgage Clause coextensive with Farm Credit's security interest under the mortgage agreement between Agstar and Farm Credit.[5]  Again, the security interest that Farm Credit had in Agstar's property does not make the Mortgage Holder clause ambiguous.

Finally Farm Credit argues that if the Court decides that its ruling at trial was error, that a jury should decide the issue because the Mortgage Holder Clause is ambiguous.  See Response at 12. Because the Court finds that the language of the Mortgage Holder Clause is clear and unambiguous, there is no need for the jury to decide the issue.  See Valdez v. Cillessen & Son, 105 N.M. 575, 583,734 P.2d 1258, 1266 (1987)("Whether an agreement is ambiguous is a question of law for the trial court, as is the construction of an unambiguous contract")(citation omitted).

Because Farm Credit's right to recovery to perishable goods and business income could only be recovered under the Standard Mortgage Clause, and such clause limited Farm Credit's right to recovery to damage to buildings or structures, the jury award of $2,250,000.00 for business loss and extra expense, and the $300,000.00 for perishable goods is stricken.[6]

---

[5]  Farm Credit, in its Response to the Court's Minute Order argued that a new jury must be empaneled and given the opportunity to categorize the value of the destroyed crops as property damage rather than business income loss.  Farm Credit contends that the jury should have the opportunity to catagorize the value of business income loss as crop loss, see Farm Credit's Brief Regarding Minute Order at 7, filed October 17, 2004 (Doc. 93); however, because the Court finds that the Mortgage Holder clause limited coverage to buildings and structures, and not to crops or perishable goods, there is no need to have a jury decide how to characterize the business income loss. Even if the jury characterized the loss as crop loss, that loss would not be covered by the Mortgage Holder Clause.

[6]  Florists' Mutual, in its Renewed Motions for Judgment and Memorandum in Support, specifically asked the Court to strike the award to Farm Credit in respect of $300,000.00 award for perishable goods and $2,250,000.00 award for business loss and extra expense, under its argument

## II.     THERE IS SUFFICIENT EVIDENCE ON THE RECORD TO SUPPORT THE JURY AWARD OF $205,000 FOR ACTUAL CASH VALUE OF ANY PROPERTY THAT WAS DAMAGED OR DESTROYED.

There was sufficient evidence presented at trial to support the jury award for "actual cash value . . . of any property that was damaged or destroyed."   Final Jury Instructions ¶ 2, at 1. Stockwell testified that the rockwool medium would cost $220,000.00 to replace.  Stockwell, when asked on direct examination "[w]ere you able to salvage the rockwool in that greenhouse," testified at trial that "[i]t wouldn't be advisable to reuse that medium."   Transcript of Trial Proceedings at 195:3-13 (taken November 9, 2004).   On cross examination, when asked if the rockwool was damaged, testified; "Well, the rockwool itself, once it dries out, sometimes it's hard to bring it back to the state where it will hold water."   Id. at 206:4-11.   Stockwell was again asked if the rockwool was damaged, and, upon clarifying that the question referred to physical damage, testified, "[n]o." Id. at 206:12-17.

A motion for judgment on a factual issue may be granted "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." Cummings v. Gen. Motors Corp., 365 F.3d 944, 949 (10th Cir. 2004).   All of the evidence and inferences must be construed in the light most favorable to the nonmoving party.   See id.   Thus, granting such a motion is proper only if there is absolutely no evidentiary basis for the claim or

---

concerning the limitations of the Standard Mortgage Clause.   See Renewed Motions for Judgment at 17.  Florists' Mutual, however, did not ask this Court to strike the $205,000.00 award for Actual Cash Value of property that was damaged or destroyed under their Standard Mortgage Clause argument.  Florists' Mutual specifically sought reduction of that award later in its Renewed Motions under a sufficiency of the evidence argument.   See Renewed Motions for Judgment at 17-18. Because Florists' Mutual did not ask the Court for relief from the $205,000.00 award, the Court will not address how its construction of the Standard Mortgage Clause affects such award.  The Court should not grant relief where it is not requested. The Court will, however, address the $205,000.00 award under Florists' Mutual's sufficiency of the evidence argument.

defense.  See id.

Here Florists' Mutual has not met its burden.  The evidence does not point only one way, but rather is susceptible to reasonable inferences that support Farm Credit's position.  First, Stockwell testified that rockwool dries out and it would not be advisable to reuse that medium.  From that testimony, the jury could reasonably infer that there was sufficient harm done to the rockwool that it had to be replaced.  In addition, although Stockwell testified that there was not physical damage, the jury could still infer that the drying out of the rockwool caused enough harm that although it may not have appeared to be physically damaged, it still had to be replaced.  In addition, Stockwell testified that the rockwool would cost $220,000.00 -- which is greater than the $205,000.00 jury award -- to replace.  Thus, there was sufficient evidence as to the harm done to the rockwool and its replacement cost on which the jury could reasonably rely in awarding $205,000.00 in property damage.[7]  The jury award of $205,000.00 in property damage will not be stricken.

**IT IS ORDERED** that Plaintiff/Counterdefendant's Motion is granted in part and denied in part.  The jury award of $2,250,000.00 for business loss and extra expense, and the $300,000.00 for perishable goods is stricken.  The jury award of $205,000.00 in property damage will not be stricken.

_____
UNITED STATES DISTRICT JUDGE

---

[7] Florists' Mutual argued only that there was insufficient evidence to support a jury award for damage done to the rockwool medium.  Florists' Mutual did not, however, contend that there was insufficient evidence to support a jury award for damage done to the greenhouse shade curtain or the tomato plants, see generally Renewed Motions, both of which may fit under the category of general property, see Response at 16-18.

*Counsel*:

Jonathan W. Hewes
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Clayton H. Farnham
Drew Eckl & Farnham, LLP
Atlanta, Georgia

 *Attorneys for the Plaintiff*

Bruce Boynton
Boynton Law Office
Grants, New Mexico

 *Attorney for Defendant/Counterclaimant Agstar, Inc.*

Ronald J. Segal
Sutin, Thayer & Browne
Albuquerque, New Mexico

-- and --

Thomas C. Mielenhausen
Lindquist & Vennum P.L.L.P.
Minneapolis, Minnesota

 *Attorneys for Defendant/Counterclaimant Farm Credit Services of the Mountain Plains, PCA*